WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| National Fire & and Marine Insurance Company,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Infini PLC, et al.,<br><br>　　　　　Defendants. | No. CV-16-03874-PHX-GMS<br><br>**ORDER** |
| Infini, PLC, et al.,<br><br>　　　　　Counterclaimants,<br><br>v.<br><br>National Fire & Marine Insurance Company,<br><br>　　　　　Counterdefendant. | |
| Infini PLC, et al.,<br><br>　　　　　Third-Party Plaintiffs,<br><br>v.<br><br>AIG Claims, Inc., et al.,<br><br>　　　　　Third-Party Defendants. | |

Pending before the Court is Plaintiff/Counterdefendant National Fire & Marine Insurance Company's (NF&M) Motion for Judgment on the Pleadings. (Doc. 73). For the following reasons, the Court grants the motion in part and denies the motion in part.

## BACKGROUND

Defendant/Counterclaimant, Dr. William Hall, provides cosmetic procedures and surgeries through his company, Infini, PLC (collectively, "Infini"). (Doc. 1 ¶ 9; Doc. 25 ¶ 6). On August 12, 2014, Dr. Hall performed a liposuction procedure on Defendant Donna Willis. (Doc. 1 ¶ 10; Doc. 25 ¶ 6). Subsequent to the liposuction, Ms. Willis required hospitalization and additional surgeries. Ms. Willis filed a complaint against Infini in Maricopa County Superior Court. (Doc. 1 ¶¶ 11–13; Doc. 25 ¶ 7). The case before this Court principally concerns whether the Plaintiff is obliged to provide the Defendants with coverage and/or a defense for Ms. Willis's claims in the Maricopa County Superior Court.

At the time of Ms. Willis's surgery, Infini was insured against malpractice claims by Lexington Insurance Company (produced by Wells Fargo Insurance Services). (Doc. 1 ¶ 16; Doc. 25 ¶ 9). On September 4, 2014, Ms. Willis's husband requested Ms. Willis's medical records from Infini. Upon receiving this request, Infini notified Wells Fargo of Ms. Willis's hospitalization and her husband's request for medical records. (Doc. 25 Counterclaim ¶ 20–21). By September 17, 2014, Ms. Willis retained an attorney, John Brewer. Mr. Brewer requested Ms. Willis's medical records from Infini. (Doc. 1 ¶ 18; Doc. 25 ¶ 9). Again, Infini notified Wells Fargo of the request. (Doc. 1 ¶ 19; Doc. 25 ¶ 9).

Around the same time, Infini applied for medical malpractice insurance for the upcoming year. Wells Fargo submitted an application to NF&M on behalf of Infini on September 17, 2014. Infini did not provide any information about Ms. Willis's injury on the application. (Doc. 1 ¶¶ 35–40; Doc. 25 ¶¶ 10–11). On October 1, 2014, Infini and Dr. Hall submitted an insurance renewal application to Lexington. The Lexington application asked: "Are you aware of any circumstance, accident or loss which has occurred after the retroactive date, which may result in a claim under this insurance coverage that has not been reported to your current or prior insurer?" Dr. Hall answered this question by noting that a lawyer had requested medical records, presumably in

reference to Ms. Willis's case. (Doc. 1 ¶¶ 22–23; Doc. 25 ¶ 9). Infini ultimately decided to renew the insurance policy with Lexington, and thus did not sign a contract with NF&M. (Doc. 1 ¶ 24; Doc. 25 ¶ 9).

On January 29, 2015, Mr. Brewer sent a letter to Infini asking for Infini's insurance information. Infini informed Wells Fargo and Lexington of the request. (Doc. 1 ¶¶ 29–31; Doc. 25 ¶ 9). By May 19, 2015, however, Lexington informed Infini that the new insurance policy did not cover injuries caused by liposuction procedures. Therefore, they would not defend any claim brought by Ms. Willis. (Doc. 1 ¶ 33; Doc. 25 ¶ 9). Since liposuctions are a significant part of Dr. Hall's practice, he sought a new insurance policy that would cover these procedures. Infini again applied for insurance from NF&M.[1] This application asked: "[H]ave you or anyone from your practice received a written request from an attorney for treatment records concerning any of your current or former patients that might reasonably result in a claim or suit against you?" Dr. Hall noted that Ms. Willis's attorney had requested records but that no suit had yet been filed. He also noted that this matter had been reported to his current insurer. (Doc. 25 Counterclaim ¶ 42).

NF&M issued a policy on June 2, 2015 to cover the policy period of May 29, 2015 to May 29, 2016. (Doc. 1 ¶ 44; Doc. 25 ¶ 15). Under the policy, NF&M covers a loss resulting from "a claim that was first made against the insured facility, or its agent, during the policy period." (Doc. 1 ¶ 46; Doc. 1 Ex. 1 page 7). NF&M also covers a loss resulting from "a potential claim that was first discovered by the insured facility, or its agent, during the policy period." (Doc. 1 ¶ 46; Doc. 1 Ex. 1 page 7). The policy specifically excludes coverage, however, of "[a]ny potential claim that was first discovered by any authorized insured prior to the policy period" (the "prior acts policy exclusion"). (Doc. 1 ¶ 49; Doc. 1 Ex. 1 page 8). The policy defined a "claim" as "an express, written demand served upon an Insured for money or services as compensation for civil damages." (Doc. 1 ¶ 47; Doc. 1 Ex. 1 page 46). A "potential claim" is "an event

---

[1] NF&M denies having received the second, updated application from Infini. (Doc. 1 ¶ 43; Doc. 52 ¶ 42). However, for the purposes of this motion, they stipulate to the existence of the second application and do not dispute it. (Doc. 73, page 4 note 1).

- 3 -

the Insured knows or reasonably should know is likely to result in a claim." (Doc. 1 ¶ 48; Doc. 1 Ex. 1 page 48).

Ms. Willis filed her lawsuit on January 7, 2016. (Doc. 25 Counterclaim ¶ 44). NF&M agreed to defend Dr. Hall under a reservation of rights. (Doc. 25 Counterclaim ¶ 46). On August 2, 2016, NF&M revised its reservation of rights and notified Infini that the claim might not be covered due to the policy exclusion relating to discovery of potential claims prior to the policy period. (Doc. 25 Counterclaim ¶ 53). NF&M brings this suit seeking a declaratory judgment that it is not responsible for covering Ms. Willis's claim against Dr. Hall and Infini. Infini countersued, seeking a declaration that NF&M must cover Ms. Willis's claim and alleging that NF&M was negligent in its dealings with Infini.

## DISCUSSION

### I. Legal Standard

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is "properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co.*, 50 F.3d 1486, 1488 (9th Cir. 1995); *Fajardo v. Cty. Of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999). The moving party must "clearly establish[ ] on the face of the pleadings that no material issue of fact remains to be resolved." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). A motion for judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion, and so the same standard of review is used in both. *Cafasso ex rel. v. General Dynamics C4 Systems, Inc.*, 637, F.3d 1047, 1054 n. 4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). The court generally may not consider matters outside the pleadings without converting the motion into a motion for summary judgment. Fed. R. Civ. P. 12(d). However, the court may "consider documents on which the complaint necessar[ily] relies." *Rosa v. Cutter Pontiac Buick GMC of Waipahu, Inc.*, 120 Fed. Appx. 76, 77 (9th Cir. 2005) (finding that a sales

contract and its addendum were documents upon which the complaint necessarily relied).

## II. Discussion

The parties dispute whether Ms. Willis's claim against Infini falls into NF&M's prior acts policy exclusion. The facts Infini claims are in dispute are actually disagreements over the legal significance of facts that are not in dispute. The parties have included the relevant language from the insurance policy in their complaints, but the Court is also permitted to consider the insurance policy itself as the complaint necessarily relies on it.

### A. The Insurance Policy's Terms Exclude Coverage

In Arizona, the interpretation of an insurance contract is a question of law. *Liristis v. Am. Family Mut. Ins. Co.*, 61 P.3d 22, 25 (Ariz. Ct. App. 2002). Insurance policies are "read as a whole, so as to give a reasonable and harmonious effect to all of its provisions." *Charbonneau v. Blue Cross of Washington and Alaska*, 634 P.2d 972, 975 (Ariz. Ct. App. 1981). Insurance contracts are interpreted "according to their plain and ordinary meaning." *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. Ct. App. 2000). When the insurance policy language is unambiguous, "the court does not create ambiguity to find coverage." *American Family Mut. Ins. Co. v. White*, 65 P.3d 449, 452 (Ariz. Ct. App. 2003). The insured party bears the burden of establishing coverage, while the insurer bears the burden of establishing that a policy exclusion is applicable. *Keggi*, 13 P.3d at 788.

#### 1. The prior acts policy exclusion sets forth an objective test.

In an insurance contract, "[t]he term 'reasonably' indicates that an objective standard should apply." *Weddington v. United Nat. Ins. Co.*, 346 Fed. Appx. 224, 226 (9th Cir. 2009). *See also In re Marriage of Williams*, 200 P.3d 1043, 1046 (Ariz. Ct. App. 2008) (stating that "the term 'reasonable' has been used in [Arizona] law to set forth an objective standard"). Arizona courts have explored the difference between subjective and objective policy exclusions. *See Ohio Cas. Ins. Co. v. Henderson*, 939 P.2d 1337, 1341 (Ariz. 1997). In *Henderson*, the policy exclusion at issue dealt with events that the

insured "expected or intended" to occur. *Id.* at 1339–42. This exclusion was held to require a subjective test. *Id.* at 1341. The Court contrasted the language of this subjective policy exclusion with an alternative, objective policy exclusion that had been rejected by the contract drafters. The objective exclusion barred coverage for events "which with reasonable certainty may be expected to produce injury or damage." *Id. Henderson* establishes that whether a policy exclusion is objective or subjective is to be determined by the wording of the exclusion itself. It also demonstrates that, as the *Weddington* court held, the use of the term "reasonably" gives rise to an objective test of coverage. Courts may determine objective reasonableness as a matter of law. *See, e.g., Pinal County v. Cooper ex rel. County of Maricopa*, 360 P.3d 142, 146 (Ariz. Ct. App. 2015) (noting that objective standards allow courts to dispose of cases at the summary judgment phase); *Smith v. Lucia*, 842 P.2d 1303, (Ariz. Ct. App. 1992) (applying an objective standard).

The language of NF&M's prior acts policy exclusion is clear. Any "potential claim" that is first discovered prior to the start of the policy period is not covered. (Doc. 1 ¶ 46). The key dispute, then, is whether Ms. Willis's injury and subsequent requests for records meets the definition of a "potential claim." A "potential claim" is one that the insured knew or *reasonably should have known* was likely to become an actual claim. (Doc. 1 ¶ 48). This definition contains two alternative tests: a subjective element (whether the insured knew) and objective element (whether the insured reasonably should have known). As to the subjective element, there is no allegation in the pleadings that Infini had actual knowledge that Ms. Willis was planning to file a claim. She did not actually file a claim until the policy period insured by NF&M began. The alternative, second half of the prior acts policy exclusion at issue here creates an objective test. It does not require the insured to exercise any subjective judgment, such as in answering questions on insurance applications. *Cf. James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920–22 (9th Cir. 2008). The insured's personal judgment as to whether a claim is likely or not is irrelevant. It only asks whether it reasonably should have been known that a claim is likely to result, thus creating an objective test.

### 2. Infini reasonably should have known that a claim was likely to result from Ms. Willis's injury.

Using the objective test required by the language of the policy exclusion, Infini should have reasonably known that Ms. Willis's injury was likely to result in a claim. Infini knew that Ms. Willis took ill after her liposuction. (Doc. 1 ¶ 54; Doc. 25 ¶ 22). It knew that Mr. Willis requested medical records. (Doc. 1 ¶ 56; Doc. 25 ¶ 24). It knew that she hired an attorney. (Doc. 1 ¶ 59; Doc. 25 ¶ 26). This attorney also requested medical records and requested Infini's insurance information. (Doc. 1 ¶ 59; Doc. 25 ¶ 26). Each time Ms. Willis or her agents requested information, Infini notified their prior insurer of her actions. (Doc. 1 ¶¶ 56, 60; Doc. 25 ¶¶ 24, 26). Infini thought the questions were of enough import to keep their prior insurer up to date. By contrast, in *James River*, the Ninth Circuit found that a claim was not necessarily reasonably foreseeable when the insured lawyer's former clients only expressed disappointment in a lack of attention to the case and requested the return of documents and fees to "bring [the] matter to a close". 523 F.3d at 919, 922. Ms. Willis's actions, on the other hand, directly involved an attorney and she sought to gain information that would be relevant in a lawsuit. Given what Infini knew of Mrs. Willis's actions after her injury, a reasonable person or entity in Infini's position would have believed that a claim was likely to result.

Moreover, in the second application for insurance from NF&M, Infini listed Ms. Willis as patient whose injury "might reasonably result in a claim or suit against you." (Doc. 25 Counterclaim ¶ 42; Doc. 74 Ex. A pages 3, 4). Infini provided a similar answer to a question on Lexington's renewal application that asked about instances which "may result in a claim." (Doc. 1 ¶ 58; Doc. 25 ¶ 26). Although the wording of the application question and the policy exclusion are not precise mirrors of each other, the answers indicate that Infini was aware of the potential claim. Infini's own actions and the actions of Ms. Willis and her agents indicate that a claim was reasonably foreseeable. Therefore, Ms. Willis's injury was a potential claim subject to the prior acts policy exclusion.

### 3. The reasonable expectations doctrine does not apply.

Infini argues that the reasonable expectations doctrine should apply to this case: because NF&M initially agreed to defend the claim and the reservation of rights only mentioned possible coverage issues with intentional tort claims, Infini reasonably expected that NF&M would defend the claim and would only deny coverage for the specified reasons. The reasonable expectations doctrine does not cover this instance. It applies when the *written insurance policy* does not reflect the reasonable expectations that the parties had while negotiating the contract. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 395 (Ariz. 1984). In this way, courts will sometimes look beyond the four corners of the insurance contract, because while "words, of course, are usually of paramount importance . . . other matters are also significant." *Id*. In *Darner*, for example, the written insurance policy had a lower coverage limit but the insurance company's agent represented to the insured that an additional umbrella policy would provide higher coverage. *Id*. at 385. Because the coverage limits had been separately negotiated and the boilerplate language excluding coverage was not bargained for, the court allowed a factfinder to determine that the insured would be covered up to the higher amount. *Id*. at 401.

Similarly, the plain language of a contract can be excused under the reasonable expectations doctrine even without the insurer making contrary representations of coverage. With contracts of adhesion and transactions "in which speed and efficiency are dominant," an "exclusion that subtracts from coverage usually provided by insurance should be stated in a conspicuous typeface." *Philadelphia Indem. Ins. Co. v. Barerra*, 21 P.3d 395, 402 (Ariz. 2001). This assures that the insured is notified of the contract's deviation from expected coverage.

The case at hand is different. There is no allegation that the written contract does not reflect what the parties agreed to. Whatever representations NF&M may have made in their letter agreeing to defend Infini occurred *after* the creation of the insurance contract. (Doc. 1 ¶ 51; Doc. 25 Counterclaim ¶ 46).The pleadings do not allege that

NF&M made any statements during the contract negotiation phase that induced Infini to reasonably expect that a claim filed by Ms. Willis would be covered.

### B. Other Claims

Infini brought additional claims of breach of contract, breach of good faith and fair dealing, negligence, breach of fiduciary duty, and fraud as Counterclaims/Third-Party Claims. It is not entirely clear which counts Infini intended to bring against NF&M, since the counts refer to "Third Party Defendants" and NF&M is a Counterdefendant. Infini did, however, withdraw the claim for breach of fiduciary duty. (Doc. 86, pg. 9).

#### 1. Breach of Contract

Defendant/Counterclaimant's complaint for breach of contract specifically discusses the AIG, Lexington, and Wells Fargo insurance policy which excluded liposuction coverage. NF&M was not a party to this contract, and there are no allegations in the complaint which could be interpreted to apply to NF&M. NF&M's Motion for Judgment on the Pleadings as to breach of contract is granted.

#### 2. Breach of Good Faith and Fair Dealing

Defendant/Counterclaimant makes general statements and allegations about the breach of the covenant of good faith that could apply to NF&M. In Arizona, bad faith claims against insurers are independent of coverage. *Manterola v. Farmers Ins. Exchange*, 30 P.3d 639, 645 (Ariz. Ct. App. 2001). Therefore, "[t]he covenant of good faith and fair dealing can be breached even if the policy does not provide coverage." *Lloyd v. State Farm Mut. Auto. Ins. Co.*, 943 P.2d 729, 737 (Ariz. Ct. App. 1996). But, a "bad faith claim based solely on a carrier's denial of coverage" is not available after "a final determination of noncoverage ultimately is made." *Manterola*, 30 P.3d at 646.

Defendant/Counterclaimants do not argue that NF&M breached a duty solely because the claim was denied, as in *Manterola*. Rather, they assert that NF&M acted in a "manner that would interfere with, frustrate, injure, or destroy the rights of Infini and Dr. Hall to receive the fruits of its insured agreements." (Doc. 25 Counterclaim ¶ 86). The tort of bad faith recognizes that "implicit in the [insurance] contract and the

relationship is the insurer's obligation to play fairly with its insured." *Rawlings v. Apodaca*, 726 P.2d 565, 570 (Ariz. 1986). In *Lloyd*, an insurer initially provided a defense to their insureds, but later withdrew the defense after properly deciding that the policy did not cover the claim. 943 P.2d at 730–33. The court held that despite the fact that there was no insurance coverage, the insured could still proceed with a bad faith claim. *Id*. at 738.

This Court has determined that NF&M is not obligated to defend or indemnify Infini, but the Court cannot conclude at this stage that NF&M is not liable for bad faith in dealing with Infini. *See Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1270 (Ariz. 1992) (noting that "the finding of bad faith in this case is predicated precisely on the *manner* in which State Farm reached its decision"). Neither party has fully developed these claims in the pleadings or in the motions. Construing the facts in the light most positive to the nonmoving party, as the Court must in a motion for judgment on the pleadings, the Court cannot say that there are no set of facts which the Defendant/Counterclaimant could maintain to support a breach of good faith action.

### 3. Negligence

In the Response to Motion for Judgment on the Pleadings (Doc. 86), Infini specifically noted an intent to bring a negligence claim against NF&M. Infini alleges that NF&M was negligent in providing coverage despite knowing about the Willis matter, failing to carve out an exclusion for the Willis matter, providing an initial defense to Infini, and asserting a delayed reservation of rights due to the policy exclusion. Insurance agents owe a duty of care to their insureds to "exercise reasonable care, skill and diligence in carrying out the agent's duties in procuring insurance." *Darner*, 682 P.2d at 402. *See also Webb v. Gittlen*, 174 P.3d 275, 279 (Ariz. 2008) (noting the duty insurance agents owe to their insured). Insurance agents must "exercise the degree of care ordinarily expected of persons in the profession." *Southwest Auto Painting and Body Repair, Inc. v. Binsfeld*, 904 P.2d 1268, 1272 (Ariz. Ct. App. 1995). The question of whether a defendant breached the standard of care is generally a question for a trier of

fact. It also requires development of facts about what degree of care is ordinarily used by insurance professionals. As with the breach of good faith claim, this Court cannot yet say whether NF&M breached the duty of care owed to their insured, Infini. Therefore, the Motion for Judgment on the Pleadings with regards to a negligence claim is denied.

### 4. Fraud

The claim for fraud specifically addressed Infini's insurance coverage under the Lexington policy. (Doc. 25 ¶ 116). The claim is based on the Third Party Defendants' alleged failure to inform Infini of the liposuction exclusion that was included in the policy renewal. (Doc. 25 ¶¶ 118–21). NF&M was not a party to this insurance policy. The Court grants NF&M's Motion for Judgment on the Pleadings on this count.

## C. Attorney's Fees

Both parties request attorney's fees pursuant to A.R.S. § 12-341 and A.R.S. § 12-341.01. The Court declines to assess fees or costs while some claims are still pending.

## CONCLUSION

The plain language of Infini's insurance policy with NF&M precludes coverage for Ms. Willis's claim. It does not at this stage, however, preclude a claim for bad faith or negligence.

**IT IS THEREFORE ORDERED** that the Motion for Judgment on the Pleadings (Doc. 73) of Plaintiff National Fire & Marine Insurance Company is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Request for declaratory relief is **GRANTED.**

2. Motion for Judgment on the Pleadings as to breach of contract is **GRANTED**.

3. Motion for Judgment on the Pleadings as to fraud is **GRANTED.**

4. Motion for Judgment on the Pleadings as to breach of good faith and fair dealing is **DENIED.**

/ / /

/ / /

5. Motion for Judgment on the Pleadings as to negligence is **DENIED.**

Dated this 24th day of October, 2017.

*[signature]*

Honorable G. Murray Snow
United States District Judge