**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| National Fire & and Marine Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>Infini PLC, et al.,<br><br>Defendants. | No. CV-16-03874-PHX-GMS<br><br>**ORDER** |
| Infini, PLC, et al.,<br><br>Counterclaimants,<br><br>v.<br><br>National Fire & Marine Insurance Company,<br><br>Counterdefendant. | |
| Infini PLC, et al.,<br><br>Third-Party Plaintiffs,<br><br>v.<br><br>AIG Claims, Inc., et al.,<br><br>Third-Party Defendants. | |

Pending before the Court are Lexington Insurance Company's Motion for Summary Judgment (Doc. 171), AIG Claims Incorporated's Motion for Summary Judgment (Doc. 178), Wells Fargo Insurance Services USA's Motion for Summary Judgment (Doc. 226),

and William Hall and Infini PLC's Cross Motion for Summary Judgment (Doc. 210), and Motion to Strike (Doc. 250).[1]

**BACKGROUND**

Defendant/Counterclaimant, Dr. William Hall, provides cosmetic procedures and surgeries through his company, Infini, PLC (collectively, "Infini"). Since at least 2011, Lexington Insurance Company ("Lexington") has provided coverage insurance to Dr. Hall for the medical procedures he performs in his practice. To obtain insurance coverage, Infini worked with an insurance broker, Wells Fargo Insurance Services USA ("Wells Fargo"). Lexington uses an independent third-party to adjust its claims, AIG Claims Incorporated ("AIG Claims"), and has an underwriter Smith Bell & Thompson ("SBT").

On July 24, 2014, Wells Fargo sent a renewal application to Infini. (Doc. 228-4 at 4). Several weeks later, on September 4, 2014, Infini returned the application. In the application, Infini crossed out certain kinds of liposuction—specifically liposelection and lipodissolve—because Infini did not perform those procedures. (Doc. 228-4 at 22). On the same page, the application noted that Infini performed large quantities of "local anesthesia lipo." (*Id.*). CRC Services and Wells Fargo relayed this handwritten application to SBT, Lexington's underwriter. (Doc. 171, Ex. 30). On September 29, SBT sent CRC Services an email that stated "Attached you will find a renewal quote. The premium increase is due to the significant increase in exposures." (Doc. 173-33 at 2). But the coverage that SBT produced for CRC and Wells Fargo did not ultimately contain coverage for liposuction. ("2014-2015 Policy") (Doc. 171 Ex. 11). In the communications between CRC, Wells Fargo and SBT, the parties all referred to the policy as a "renewal." (Doc. 172, Ex. 33) ("Attached you'll find the renewal quote."). And the 2014-2015 Policy from Lexington specifically stated that it was a renewal policy. (Doc. 173, Ex. 34).

On October 1, 2014, when filling out additional forms related to the application to

---

[1] The parties' requests for oral argument are denied because they have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

- 2 -

renew coverage for Dr. Hall, a representative of Wells Fargo Insurance Services noted that she was "aware of [a] circumstance accident or loss . . . which may result in a claim under the insurance coverage." (Doc. 173-12 at 51). This document specifically noted that there had been a records request to Infini from a lawyer. (*Id.*).

While Infini was corresponding with Wells Fargo about its policy renewal, Dr. Hall performed a liposuction procedure on Donna Willis. After this procedure, Ms. Willis was hospitalized and required additional surgeries. (Doc. 211-1 at 3). In September 2014, Dr. Hall received two requests for medical records from Ms. Willis—first from her husband, and then from a lawyer on her behalf. (Doc. 211-1 at 4). He was also notified that Ms. Willis had been hospitalized about a week after her liposuction procedure. (Doc. 211-1 at 3).

On January 29, 2015, counsel for Ms. Willis requested the contact information of Infini's insurance carrier. (Doc. 228-1 at 17). Infini forwarded this to Wells Fargo and Lexington. (*Id.* at 16). Ms. Willis later filed suit against Dr. Hall and Infini in Maricopa County Superior Court. (Doc. 228-1 at 2). But in May 2015, Lexington informed Infini that the new insurance policy did not cover injuries caused by liposuction, and it would not defend any claim brought by Ms. Willis. Dr. Hall and Infini filed a third-party complaint in this suit arguing that Lexington wrongfully denied coverage for the Medical Incident. It is on that complaint that the various parties bring their motions for summary judgment.

## DISCUSSION

### I. Legal Standard

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the absence ... of a genuine dispute." FED. R. CIV. P. 56(c)(1).

## II. Analysis

At the summary judgment stage, Plaintiff Infini's evidence is "to be believed, and all justifiable inferences are to be drawn in [his] favor." *See Anderson*, 477 U.S. at 255 (1986). Disputed facts are "viewed in the light most favorable to" Infini, the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

### A. Lexington Insurance Company's Motion for Summary Judgment

In Arizona, the interpretation of an insurance contract is a question of law. *Liristis v. Am. Family Mut. Ins. Co.*, 61 P.3d 22, 25 (Ariz. Ct. App. 2002). Insurance policies are "read as a whole, so as to give a reasonable and harmonious effect to all of its provisions." *Charbonneau v. Blue Cross of Washington and Alaska*, 634 P.2d 972, 975 (Ariz. Ct. App. 1981). Insurance contracts are interpreted "according to their plain and ordinary meaning." *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. Ct. App. 2000). When the insurance policy language is unambiguous, "the court does not create ambiguity to find coverage." *American Family Mut. Ins. Co. v. White*, 65 P.3d 449, 452 (Ariz. Ct. App. 2003). The insured party bears the burden of establishing coverage, while the insurer bears the burden of establishing that a policy exclusion is applicable. *Keggi*, 13 P.3d at 788.

Lexington moves for summary judgment on six of Infini's claims: (1) breach of contract, (2) bad faith, (3) negligence, (4) breach of fiduciary duty, (5) declaratory relief; and (6) fraud.

### 1. Whether the Medical Incident is covered under the 2013-2014 Policy.

In its Motion for Summary Judgment, Lexington argues that Infini did not provide adequate notice of the Medical Incident to Lexington under the terms of the 2013-2014 Policy, and so it does not have to indemnify Infini. The 2013-2014 Policy outlines Infini's duties if a claim, suit, or medical incident arises:

> If during the policy period, [Infini] shall become aware of any medical incident which may reasonably be expected to give rise to a claim being made against any Insured, [Infini] must notify [Lexington] in writing as soon as practicable. To the extent possible, notice should include:
>
> a) How, when, and where the medical incident took place;
>
> b) The named and addresses of any injured persons and witnesses; and
>
> c) The nature and location of any injury or damage arising out of the medical incident.
>
> Any claim arising out of such medical incident which is subsequently made against any Insured and reported to us, shall be considered first made at the time such notice was given to us.

(Doc. 173 Ex. 11).

On October 1, 2014, when filling out a form related to the renewal of coverage for Infini, a representative of Wells Fargo Insurance Services noted that she was "aware of [a] circumstance accident or loss . . . which may result in a claim under the insurance coverage." (Doc. 173-12 at 51). This document also specifically noted that a record request had been made by a lawyer. (*Id.*).

This information, however, does not constitute notice under the 2013-2014 Policy. It lacks the relevant facts that might be used by Lexington to process the potential claim—information that the 2013-2014 Policy says that notice should provide. The information is also addressed to Lexington's underwriter, SBT, which is not charged with processing claims that are made under Lexington's insurance policy. Lexington offers no evidence to suggest that SBT was its agent for purposes of receiving claims or that Infini had a right to believe that it was. Further, the application does not say "how when and where the medical

incident took place," the identity of the injured person, or the damages that resulted from the medical incident. In similar situations, many courts have rejected the argument that information in a renewal application could provide sufficient notice under an older policy. *See Am. Cas. Co. of Reading, v. Continisio*, 17 F.3d 62, 69 (3d Cir. 1994); *FDIC v. St Paul Fire & Marine Ins. Co.*, 993 F.2d 155, 160 (8th Cir. 1993) ("Notice that would cause one to investigate a renewal for insurance must surely be different than notice to investigate potential claims."); *LaForge v. Am. Cas. Co. of Reading,* 37 F.3d 580, 584 (10th Cir. 1994) (renewal application information not notice because it was provided to "seek coverage from the insurer's underwriters rather than in a document designed to seek recovery under the policy in effect.").

Because notice was not given during the policy period or during the automatic extension reporting period, there is no coverage for the medical incident under the 2013-2014 Policy. Thus, Lexington's Motion for Summary Judgment as to the 2013-2014 Policy period is granted.

### 2. Whether Infini reasonably expected liposuction coverage under the 2014-2015 Policy.

In Arizona, when insurance policy language unambiguously precludes coverage, that policy may still be read to provide coverage for the insured, but only if the insured had a reasonable expectation of coverage under the policy. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 391 682 P.2d 388, 396 (1984). A reasonable expectation "must be limited by something more than the fervent hope usually engendered by loss." *Id.* at 395. The "reasonable expectations" doctrine is limited to circumstances where the insurer has reason to believe that the insured would not assent to the policy if the insured knew of the particular policy language. *Id*. at 396. In *Gordinier v. Aetna Casualty & Surety Co.*, 154 Ariz. 266, 742 P.2d 277 (1987), the Arizona Supreme Court listed specific situations where *Darner* applies, including:

> Where the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage; Where some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured; Where some activity reasonably

> attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy.

*Gordinier*, 742 P.2d at 272-73 (internal citations omitted).

When an insured seeks a renewal of insurance coverage, "an insured has a right to rely on the assumption that, absent sufficient notice to the contrary, the renewal was the same in terms of coverage as the original." *James v. Burlington Northern Sante Fe Ry. Co.*, 2007 WL 2461685, at *6 (D. Ariz. 2007) (citing *Lumbermen's Ins. Co. v. Heiner*, 74 Ariz. 152, 156 245 P.2d 415, 418 (1952)).

To prevail on its motion for summary judgment here, Lexington must demonstrate that it provided "full and adequate notice" to Infini regarding the change in liposuction coverage, or that the change in coverage was not "unusual or unexpected." *See Gordinier*, 742 P.2d at 273. Lexington must also demonstrate that it did not induce a reasonable belief of coverage through its acts. *Id*. There remain factual disputes over whether Infini was ever given full and adequate notice of the change in terms, whether the change was unusual or unexpected, and whether Lexington's conduct caused Infini to reasonably expect it had coverage for liposuction.

Lexington points to the language of the quote and policy—which plainly exclude coverage for liposuction—to argue that it gave notice to Infini. But as noted above, Lexington must do more than point to the language of the renewed policy to overcome the reasonable expectations doctrine. It must demonstrate that it provided "full and adequate" notice to Infini that the terms of the policy had changed through something other than the terms of the agreement. *Gordinier*, 742 P.2d at 273.

Several facts in the record could support a finding that Infini did not receive full and adequate notice of the change in coverage. All of Infini's previous policies with Lexington provided coverage for liposuction. Infini's rates went up in the 2014-2015 Policy, which would generally indicate the same or better coverage. Indeed, Lexington's underwriter SBT noted that "the premium increase is due to the significant increase in exposure." (Doc. 173-33 at 2). Notably, this rationale for the premium increase was relayed to Dr. Hall.

(Doc. 211-1 at 5). Infini asserts that it was "astonished" to find out that the 2014-2015 Policy did not provide coverage for the liposuction procedures it performs. (*Id.* at 3). Finally, it is hard to believe that Infini would have agreed to the 2014-2015 Policy if he had known that it did not cover his liposuction procedures—which he asserts are the most likely to cause liability. (*Id.* at 2).

Lexington has failed to demonstrate it provided sufficient notice to Infini of the lack of coverage in the 2014-2015 Policy. Nor has it shown that the lack of coverage was not "unusual or unexpected," given Infini's previous history of coverage for liposuction. *Gordinier*, 742 P.2d at 272-73. The fact that Infini's premiums went up could create an "objective impression of coverage in the mind of a reasonable insured." *Gordinier*, 742 P.2d at 273. Because a reasonable jury could find that Infini had a reasonable expectation of coverage for liposuction under the 2014-2015 Policy, Lexington's Motion for Summary Judgment on Infini's claim of a breach of contract is denied in part.[2]

### 3. Whether Lexington acted in bad faith

In Arizona, insurance contracts include an implied covenant of good faith and fair dealing that requires the parties to refrain from any conduct that would impair the benefits or rights expected from the contractual relationship. *See Rawlings v. Apodaca*, 726 P.2d 565, 570 (Ariz. 1986). The tort of bad faith recognizes that "implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured." *Id.* at 570. To establish bad faith on the part of the insurer, "a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Deese v. State*

---

[2] Lexington argues that even if Infini had a reasonable expectation of coverage, the Court should still grant it summary judgment on this count because the prior acts exclusion of the 2014-2015 Policy nonetheless precludes coverage. But Lexington misunderstands the reasonable expectations doctrine. If Infini can demonstrate that it had a reasonable expectation of coverage for the medical incident, then a jury may conclude that it is covered *regardless of the unambiguous terms of the policy*, which includes terms like the prior acts exclusion. *Darner*, 682 P.2d at 396. To reiterate, a reasonable jury could find that Infini expected coverage for the Medical Incident—especially in the context of renewal, where the insurer made statements that could have caused Infini to believe it was obtaining the same coverage.

*Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 506 838 P.2d 1265, 1267-68 (1992) (internal quotation marks omitted). The first inquiry involves an objective analysis that focuses on whether the insurer acted unreasonably, while the second involves a subjective analysis as to "whether the insurer *knew* that its conduct was unreasonable or acted with such reckless disregard that such knowledge could be imputed to it." *Id.* at 507 (emphasis in original).

Lexington asserts that because there was no breach of contract, there cannot be a finding of bad faith. But in Arizona, bad faith claims against insurers are independent of coverage. *Manterola v. Farmers Ins. Exchange*, 200 Ariz. 572, 578 30 P.3d 639, 645 (Ariz. Ct. App. 2001). Therefore, "[t]he covenant of good faith and fair dealing can be breached even if the policy does not provide coverage." *Lloyd v. State Farm Mut. Auto. Ins. Co.*, 189 Ariz. 369, 377 943 P.2d 729, 737 (Ariz. Ct. App. 1996).

A jury could find that Lexington acted unreasonably by first indicating that Infini would be covered under the 2014-2015 Policy by raising its premiums, asserting that the increase in premiums is due to an increase in the risk of exposure, while providing a policy that did not cover a large portion of Infini's procedures that had been covered under the previous policy terms. Lexington does not offer an alternative explanation for why it raised Infini's rates in the 2014-2015 Policy, nor does it explain why it decided to omit coverage for liposuction from the 2014-2015 Policy—even though it had provided coverage for Infini's tumescent liposuction for years.

Although a jury could find that the denial of coverage was unreasonable, Infini must point to some facts that could indicate that Lexington either knew that it was unreasonable in denying coverage, or that it acted with reckless disregard as to the reasonableness of its denial of coverage. The email from underwriter SRT, which states that "[t]he increase in premiums is due to the significant increase in exposures," (Doc. 173-33 at 2), could be used by a jury to demonstrate that Lexington acted with reckless disregard as to the reasonableness of its conduct. This email, which was relayed to Infini, caused it to be "astonished" to find out he did not have coverage. (Doc. 211-1 at 3). A reasonable jury could find that Lexington was reckless as to the reasonableness of its conduct in processing

Infini's application for renewal and in its ultimate decision to deny coverage.

### 4. Negligence

Lexington also asks that the Court grant it summary judgment on Infini's negligence claim. Under Arizona law, an insurance company may not be sued for an independent claim of negligence for mishandling of a claim. *See Miel v. State Farm Mut. Auto Ins. Co.* 185 Ariz. 104, 111 912 P.2d 1333, 1340 (Ariz. Ct. App. 1995). Those kinds of claims must instead be brought as a breach of the covenant of good faith and fair dealing. *Id*. However, the Court in *Miel* also acknowledged that a claim for negligent "processing an application for insurance" or "for an agent's negligent misrepresentation about the scope of the insurance policy" could be brought against an insurance company. *See id.* (citing *Darner,* 140 Ariz. at 385-386; *Continental Life & Acc. Co. v. Songer*, 124 Ariz. 294, 302, 603 P.2d 921, 929 (1979)). Infini's third party complaint argues that Lexington acted negligently "by failing to obtain and/or maintain and/or honor the necessary coverage and their promises and duties as to Infini" (Doc. 25 at 17), which could include negligent processing of the claim as well as negligent misrepresentation of coverage and negligent processing of an application. However, under *Miel,* Infini cannot bring a claim against Lexington for negligent *handling* of his claim. So Infini's negligence claim against Lexington is limited to the theories of negligent misrepresentation of coverage and negligent processing of an application for insurance.

### 5. Declaratory Relief

Because this order leaves open the possibility that Infini has coverage for the medical incident from Lexington, Lexington's Motion for Summary Judgment as to declaratory relief is denied.

### 6. Fraud

In its Motion for Summary Judgment, Lexington states that because it did not intentionally conceal the fact that the 2014-2015 Policy did not cover tumescent liposuction, Infini's claim of fraud fails as a matter of law. (Doc. 170 at 28). But intentional concealment is not the standard for fraud in Arizona. Instead, the elements of

- 10 -

fraud are: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; (9) his consequent and proximate injury." *Echols v. Beauty Built Holmes, Inc.*, 132 Ariz. 498, 500 647 P.2d 629, 631 (1982). The email sent by underwriter SRT, which was relayed to Infini, could be used to establish a claim of fraud against Lexington. It was a representation that clearly implied that Infini would be covered under the new policy for claims relating to the "significant increase in risk." Infini asserts that it relied upon this email, and the email partially caused it to be astonished to discover there was no coverage for liposuction under his new policy. (Doc. 211-1 at 3). Lexington's Motion for Summary Judgment as it relates to fraud is denied.

### 7. Breach of Fiduciary Duty

Infini's breach of fiduciary duty claim against Lexington fails as a matter of law. *See Kovacs v. Sentinel Ins. Co. Ltd.*, 2016 WL 3570475 (D. Ariz. 2016) ("Insurer owes no fiduciary duties to an insured under Arizona law.") Thus, Lexington's Motion for Summary Judgment as to breach of fiduciary duty is granted.

### B. AIG Claims' Motion for Summary Judgment

AIG Claims is a third-party claims adjuster that contracts with Lexington to adjust claims made by persons who are insured by Lexington. In its complaint, Infini alleges six separate claims of liability against AIG Claims. But in its response, Infini PLC only alleges that AIG Claims acted in bad faith when it denied coverage to Infini. AIG Claims has asked for summary judgment on Infini's claim of bad faith against AIG Claims. Because the Court finds that there are insufficient facts to support a finding of bad faith against AIG, it will grant AIG's Motion for Summary Judgment. But AIG Claims' conduct may still be imputed to Lexington for claims of bad faith and breach of contract.

/ / /

/ / /

### 1. Infini's Claim Against AIG for Bad Faith is Not Supported by Sufficient Facts

In Arizona, it is unsettled whether an insurance adjuster can be held liable for bad faith. *See IDS Property Cas. Ins. Co. v. Gambrell*, 913 F.Supp.2d 748, 753 (D. Ariz. 2012) ("[J]udges have repeatedly concluded that the law surrounding the viability of a bad faith claim against an insurance adjuster is unsettled in Arizona."). Because AIG Claims conduct did not rise to the level of bad faith, this analysis assumes that an insurance adjuster can be held liable for bad faith. In processing Infini's request for coverage, AIG Claims adjuster Kristina Kovac simply looked to the 2014-2015 Policy and noted that it did not cover liposuction. While it is possible that Infini may nonetheless be covered under the 2013-2014 Policy, there is no evidence that Ms. Kovac's *knew* that she was acting unreasonably in denying coverage, or that she acted with reckless disregard when denying coverage. Infini points to no separate evidence, other than the denial and a failure to consider Infini's older policies, to support a factual finding that AIG Claims acted in bad faith when it denied coverage.

### 2. AIG Claims' Conduct Is Still Imputed to Lexington.

Although AIG Claims' conduct in isolation does not rise to the level of bad faith, it may be considered in determining whether Lexington acted in bad faith. AIG Claims adjusted Infini's claim on behalf of Lexington, and so its conduct may be imputed to Lexington for purposes of Infini's claims of breach of contract and bad faith. *See Meineke v. GAB Business Services, Inc.*, 195 Ariz. 564, 568 991 P.2d 267, 271 (Ariz. Ct. App. 2000) (noting that where an adjuster mishandles a claim "the adjuster's actions are imputed to the insurer."). The Court will grant Infini's cross motion for summary judgment on this limited issue, and finds that AIG's conduct is imputed to Lexington. (Doc. 210 at 22).

### C. Wells Fargo Insurance Services' Motion for Summary Judgment

Wells Fargo Insurance Services moves for summary judgment against Infini on five claims: (1) Breach of contract, (2) Breach of the covenant of good faith and fair dealing, (3) Breach of Fiduciary Duty, (4) Fraud, and (5) Negligence.

### 1. Breach of Contract

To establish a claim for breach of contract, Infini must demonstrate the existence of a contract between it and Wells Fargo, its breach, and resulting damages. *First Am. Title Ins. Co. v. Johnson Bank*, 239 Ariz. 348, 352 372 P.3d 293, 397 (2016). In its Motion for Summary Judgment, Wells Fargo Insurance Services argues that the Court should grant summary judgment on Infini's breach of contract claim against it because Wells Fargo provided some medical malpractice coverage to Infini, Infini took an unreasonably long time to fill out the application, and Infini failed to read the quote and ultimate policy coverage to ensure it provided sufficient coverage for his practice.

There is evidence that indicates that Wells Fargo Insurance Services' obligation under the contract extended beyond merely providing *some* medical malpractice coverage. On its website, Wells Fargo advertises services that include "tailoring the right solutions to help protect your company," and notes that "our experienced teams help businesses navigate smoothly through a myriad of complex issues." (Doc. 241 at 8-9). Given that Wells Fargo Insurance Services had obtained liposuction coverage for Infini for years, it likely needed to provide coverage for all of his services under the contract.

Wells Fargo does not point to any case law that demonstrates an insured's failure to read the insurance coverage provided by the insurance broker would conclusively demonstrate that the insurance broker did not breach its contract with the insured. Part of the reason that insured persons hire insurance brokers is to have them navigate complex insurance agreements. A reasonable jury could find that Wells Fargo breached its agreement with Infini by failing to provide it with sufficient coverage for its practices, and Wells Fargo request for summary judgment on this count must be denied.

### 2. Good Faith and Fair Dealing

Wells Fargo also asks that the Court grant it summary judgment on Infini's claim that Wells Fargo violated the covenant of good faith and fair dealing. Arizona law "implies a covenant of good faith and fair dealing in every contract. The duty arises by virtue of a contractual relationship." *Rawlings v. Apodaca*, 151 Ariz. 149, 153 726 P.2d 565, 569

(1986) (internal citations omitted). To bring an action in tort claiming damages for the breach of good faith, a party must establish "a special relationship between the parties arising from elements of public interest, adhesion, and financial responsibility." *Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474, 491, 38 P.3d 12, 28-29 (2002)

Whether a "special relationship" existed between Wells Fargo Insurance Services and Infini is a question of fact. There are sufficient facts in the record that could lead a reasonable jury to find that Wells Fargo Insurance Services had a special relationship with Infini, given that Infini used Wells Fargo Insurance Services to procure insurance since 2003 (Doc. 25 at 8), and trusted them to provide insurance coverage for his medical practice. Infini also contacted Wells Fargo Insurance Services after the lawyer's request for medical records, seeking advice on how to proceed. These facts could lead a jury to find that a special relationship existed between Wells Fargo Insurance Services and Infini.

### 3. Breach of Fiduciary Duty

Wells Fargo argues that it is entitled to summary judgment on Infini's breach of fiduciary duty claim. In Arizona, insurance brokers typically owe a duty to the individual seeking insurance coverage "to exercise reasonable care, skill and diligence in carrying out the agent's duties in procuring insurance." *Darner*, 682 P.2d at 402 (internal citations and quotation marks omitted). While this duty may be used to support a negligence claim against an insurance broker, it is not the same thing as a fiduciary duty. In *Darner* the Arizona Supreme Court specifically noted that an insurance broker "cannot be held accountable as [the insured's] fiduciary." *Id*. The Court is aware of no Arizona case law where a court found that an insurance *broker* owed the insured a fiduciary duty, so this claim fails as a matter of law. *See also Kovacs v. Sentinel Ins. Co. Ltd.* 2016 WL 3570475 (D. Ariz. 2016) ("Insurer owes no fiduciary duties to an insured under Arizona law.").

### 4. Fraud

Infini does not respond to Wells Fargo's request for summary judgment on the claim of fraud. There is not sufficient evidence in the record to support a finding that Wells Fargo made false representations that the 2014-2015 Policy provided coverage for liposuction.

Therefore, the Motion for Summary Judgment as to fraud is granted.

### 5. Negligence

Because Wells Fargo Insurance Services did not request summary judgment on Infini's negligence claim in its initial Motion for Summary Judgment, its request for *sua sponte* partial summary judgment in its reply motion is denied.

**IT IS THEREFORE ORDERED** that Lexington's Motion for Summary Judgment (Doc. 171) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. As to breach of contract is **GRANTED IN PART** as to coverage under the 2013-2014 Policy**.**
2. As to good faith and fair dealing is **DENIED**.
3. As to negligence is **GRANTED IN PART** as to the negligent mishandling of a claim, but not as to negligent processing of an application for insurance or negligent misrepresentation of the scope of coverage.
4. As to breach of fiduciary duty is **GRANTED**.
5. As to declaratory relief is **DENIED.**
6. As to fraud is **DENIED.**

**IT IS FURTHER ORDERED** that AIG Claims' Motion for Summary Judgment (Doc. 178) is **GRANTED**. The Clerk of Court is directed to terminate AIG from this action.

**IT IS FURTHER ORDERED** that Infini's Cross Motion for Summary Judgment (Doc. 210) is **GRANTED** because AIG Claims' conduct is imputed to Lexington on the bad faith claim**.**

**IT IS FURTHER ORDERED** that Wells Fargo Insurance Services' Motion for Summary Judgment (Doc. 226) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. As to breach of contract is **DENIED**.
2. As to good faith and fair dealing is **DENIED**.
3. As to breach of fiduciary duty is **GRANTED**.

4. As to negligence sua sponte is **DENIED.**

5. As to fraud is **GRANTED**.

**IT IS FURTHER ORDERED** that Infini's Motion to Strike (Doc. 250) is **DENIED AS MOOT**.

ated this 3rd day of January, 2019.

*G. Murray Snow*
G. Murray Snow
Chief United States District Judge